**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TREVA RANKIN-PETERS,

    Plaintiff,

v.                                                  Case No. 05-73291

HURON CHARTER TOWNSHIP and HURON
TOWNSHIP POLICE DEPARTMENT,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
"MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Pending before the court is the Motion to Dismiss filed by Defendants Huron Charter Township and Huron Township Police Department.[1] The matter has been fully briefed and the court has concluded that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion.

**I. FACTUAL BACKGROUND**

The following facts appear in the record presented by the parties and are undisputed except as specifically noted. Plaintiff began working for Defendant as a part-time communications officer in 1997. (3/24/97 Letter from Chief of Police to Township Trustees, Def.'s Ex. 1.) She became a full-time dispatcher in 2001. (1/3/01 Letter from Chief of Police to Township Supervisor, Def.'s Ex. 2.) On January 29, 2003, Plaintiff filed a disability claim with her insurer. (Disability Claim, Def.'s Ex. 3.) She was

---

[1] The parties agree that the "Huron Township Police Department" is not a separate legal entity and not a proper defendant. The court will refer to Huron Charter Township as the only defendant in this action.

suffering from pain in both of her knees and was scheduled for surgery the following day. (*Id.*) Her doctor stated that Plaintiff would have to take a medical leave from work for an undetermined period of time. (*Id.*)

Plaintiff received a letter from her insurer approving her leave through April 2003, and instructing her, pursuant to her insurance policy, to provide medical data supporting her disability claim. (2/6/03 Letter from Unum Life Insurance Co., Def.'s Ex. 4.) She received benefit payments and her doctor submitted regular correspondence indicating that Plaintiff could not return to work. (*Id.*; Sickpay Records, Def.'s Ex. 7; Doctor's Notes, Def.'s Ex. 5.) Plaintiff's medical leave continued for several months past April 2003, and she underwent a second surgery on September 23, 2003. (Doctor's Notes, Def.'s Ex. 5.) Her doctor later indicated on January 19, 2004 that Plaintiff could return to limited duty. (*Id.*)

A few months earlier, Robert Metzger, Defendant's chief of police, decided to fill Plaintiff's vacant position with one of the part-time dispatchers and to leave the resulting part-time opening vacant. (9/18/03 Metzger Memorandum, Def.'s Ex. 9.) Metzger stated that he was not questioning Plaintiff's leave status, nor was he disciplining or discharging her or laying her off. (*Id.*) Metzger wrote that his intent was to fill a position that had been vacant since January 2003. (*Id.*)

Plaintiff, who is a union employee, filed a grievance on September 2, 2003. (9/2/03 Grievance Report, Def.'s Ex. 9.) She quoted an August 28, 2003 letter from the township clerk indicating that Plaintiff's full-time position was being filled and "will not be available upon [Plaintiff's] return." (*Id.*) Plaintiff contended that she was terminated and

2

that Defendant did not have just cause under the collective bargaining agreement. (*Id.*) She demanded immediate reinstatement and compensation for any losses. (*Id.*)

As noted above, Metzger denied that Plaintiff was being terminated. (Metzger Memorandum.) He met with Plaintiff and her union steward to discuss the situation. (*Id.*) He told Plaintiff that she was not being disciplined, that he would not fill the newly vacant part-time dispatcher position, and that he did not dispute her doctor's claim that she could not return to work at that time. (*Id.*) Metzger denied Plaintiff's grievance. (*Id.*) One of the township trustees reviewed and upheld the denial of Plaintiff's grievance. (10/3/03 Letter from Trustee Carey, Def.'s Ex. 9.) The trustee agreed that Plaintiff was not being laid off, disciplined or discharged and that Defendant was not questioning Plaintiff's medical claim. (*Id.*) The trustee also noted that Plaintiff could not be reinstated because she was still on disability and, according to her doctor, would so remain for at least 2-3 months. (*Id.*)

Karen Stackpoole, the union steward, averred that Plaintiff did not respond to the trustee's decision with a demand for arbitration under the collective bargaining agreement, which meant that the grievance was disposed of in favor of Defendant. (Stackpoole Dep. at 27-28, Def.'s Ex. 11.) She also averred that, if placing Plaintiff back in her full-time position meant displacing a union employee who was beyond the one-year probationary period, then the union would file a grievance on behalf of that displaced employee. (*Id.* at 32.) At the time of Plaintiff's grievance, Plaintiff told Stackpoole that she could return to work for four-hour shifts, but Stackpoole never saw a doctor's slip supporting that assertion. (*Id.* at 29-30.) Deborah Bowman, Defendant's deputy clerk, who would have processed such a slip and contacted Plaintiff's immediate

supervisor about Plaintiff's limited return to work, averred that Plaintiff never submitted any documentation before her actual return that indicated that she could return to work on a limited basis. (Bowman Dep. at 5, 7-9.) Bowman further stated that Plaintiff never came to her to say that she could work a four-hour shift. (*Id.*)

Several months later, the insurer contacted Plaintiff to notify her that her medical disability ended on January 19, 2004, the date that her doctor approved her return to limited work duties.[2] (8/10/04 Letter from Unum Life Insurance Co., Def.'s Ex. 6.) The insurer noted a return to work slip that restricted Plaintiff's work to activities that did not include repetitive reaching and twisting, continuous standing and walking, squatting, kneeling, and climbing. (*Id.*)[3] It claimed that, according to Defendant, Plaintiff's job was 98% sedentary and that, if she needed to get to a file cabinet, it was only one step from her desk. (*Id.*) The letter included instructions for how to appeal the insurer's determination. (*Id.*)

In her deposition, Plaintiff avers that she telephoned the insurer in response to the letter, but she did not submit any documents or request any appeal of the decision to end her disability benefits. (Pl.'s Dep. at 35, Def.'s Ex. 10.) She also claims that her doctor approved four-hour shifts for her in April or May 2003 and that she submitted

---

[2] As described in greater detail below, Plaintiff returned to work on January 14, 2004. (Pl.'s Dep. at 35, Def.'s Ex. 10.) It is unclear if Plaintiff received earlier notification of the termination of her benefits. Defendant alleges that the August 10, 2004 letter by the insurer "confirmed its earlier termination of disability benefits . . ." (Def.'s Mot. ¶18.)

[3] Plaintiff's doctor checked off the same restrictions on forms he signed authorizing return to limited work for Plaintiff on January 19, 2004 and March 1, 2004. (Doctor's Notes, Def.'s Exs. 5, 13.)

documentation to Defendant, (*id., at* 36), but neither party has submitted such documentation to the court; Plaintiff stated in her deposition that she could not find it among the other submitted medical documents. (*Id.*, at 44-45, 59.) She said that, in any event, her knee worsened in the meanwhile and she needed additional injections and surgery in May 2003. (*Id., at* 60-61.)

Plaintiff further states that when she returned to work, on January 14, 2004, (*id.*, at 74), she underwent refresher training that lasted about forty hours, or a few eight-hour days. (*Id.* at 56-57.) After training, she began work on a part-time basis. (*Id.* at 57.) She assumed the position of the part-time employee who Defendant chose to fill Plaintiff's full-time position. (*Id.* at 58.) She concedes that Defendant had to have somebody perform her functions during her absence. (*Id.* at 58.) She further indicates that she "was never at any time off the books and then rehired." (*Id.* at 74.) She states that her job accommodates her disability and that she is able to work full-time if Defendant wanted her to do so. (*Id.* at 74-75, 84.) Defendant never told her that she could not work full-time due to her disability, but she believes that such is the case. (*Id.* at 76-77.)

Plaintiff avers that no one would talk to her at first when she returned to work and that Metzger treated her differently because of her disability. (*Id.* at 77-79, 83.) He avoids her, (*id.* at 79), makes "[l]ittle underhanded, snide remarks," (*id.* at 80), and introduces people to others but excludes her, (*id.* at 80). Plaintiff claims that her work was scheduled to avoid contact with Metzger, (*id.* at 81-82), though she admits that contact with him is unnecessary for completion of her job duties, that he is three levels of command above her, and that in the 24-hour dispatch center some employees have

schedules that afford no contact with him. (*Id.* at 82.) She also concedes that the filing of this lawsuit, which admittedly came after her return to work and the allegedly cold reception she received, may have had a negative impact on her relationship with Metzger. (*Id.* at 83-84). She also alleges that her application for another position was denied because Defendant's hiring criteria screen out disabled applicants, although she acknowledges that the successful applicant has experience that she lacks. (*Id.* at 84-85.)[4]

## II. PROCEDURAL HISTORY

Plaintiff filed a complaint alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq,*, the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Law. § 37.1101 *et seq*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. (Pl.'s Am. Compl. ¶¶14-18.) Plaintiff demands a return to full-time work with retroactive seniority, back pay with interest, pension and related benefits, as well as compensatory damages, costs and fees. (*Id.* at ¶¶21-23.)

Defendant filed the instant motion to dismiss and motion for summary judgment on July 7, 2006. Defendant argues that, pursuant to Federal Rule of Civil Procedure

---

[4] In 2005, Plaintiff wrote an undated letter to the township supervisor inquiring whether she might be able to work more hours in light of the fact that the township was allegedly seeking more part-time dispatchers. (Letter to Twp. Supervisor, Pl.'s Supp. Resp. Ex. 2.) Metzger then wrote a letter to Plaintiff inquiring about the letter, stating that it was written without authorization and in violation of department rules, requesting a response, ordering her to not correspond about or discuss departmental operations without clearance, and intimating that discipline up to and including termination was possible. (5/19/05 Metzger Memo at Pl.'s Supp. Resp. Ex. 1). Plaintiff responded with a letter of apology denying that she meant to undermine Metzger. (5/27/05 Letter at Pl.'s Supp. Resp. Ex. 3.) According to Plaintiff, neither party took further action. (Pl.'s Supp. Resp. 4.)

12(b)(6), the court should dismiss all claims against Defendant Huron Township Police Department because it is an administrative department of the township that has no separate legal existence apart from Defendant. (Def.'s Br. at 14). Plaintiff concedes that the Huron Township Police Department is not a legal entity. (Pl.'s Answer at 6.)

On the merits, Defendant contends that summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is appropriate because there is no genuine issue of material fact concerning the following issues: 1) that Plaintiff was not medically able to return to work when Defendant filled the full-time position it had held for many months for Plaintiff, 2) that Plaintiff was never certified as medically able to work and therefore ineligible for reinstatement under FMLA during any twelve-week period while she was on medical leave, and 3) that Defendant acted within its managerial rights under the collective bargaining agreement and did not discriminate against Plaintiff because her position was filled at a time when she was medically unable to return to work and because she was reinstated as soon as practical to part-time status in the only available position in her classification when she was ready to return to work. (Def.'s Br. at 1-2.)

Plaintiff responded[5] on August 7, 2006 and contends that there are issues of material fact. She argues that whether her chronic knee problems constitute a disability is at least a question of fact. (Pl.'s Resp. at 4.) She contends that she was otherwise qualified to perform the job, that she proposed working two four-hour shifts, and that testimony from her doctor would counter Defendant's claim that such a work schedule

---

[5] Plaintiff styles her response to Defendant's motion as her "answer"; the court will refer to it as her response. The same is true for Plaintiff's "supplemental answer," which the court will call the supplemental response.

was not endorsed by him. (*Id.* at 5).[6] Plaintiff contends that this promised testimony "creates a question of fact . . ." (*Id.*) Plaintiff further asserts that the filling of her full-time position, and the failure to offer her the same full-time position upon her return, constitutes an adverse employment action. (*Id.*) Finally, a large part of Plaintiff's response contended that Defendant's motion was premature and that Plaintiff therefore could not respond because the deposition of Metzger was not completed.[7]

### III.  STANDARD

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Perry v. Am.*

---

[6] Apart from his notes, there is no affidavit, deposition or other evidence originating from Plaintiff's doctor in the record.

[7] Plaintiff's response repeatedly stresses the central importance of Metzger's deposition: 1) describing him as a "vital witness," (Pl.'s Resp. at 2), 2) stating that "Chief Metzger's testimony is vital to Plaintiff's claims," (*Id.* at 3), and asserting that "the deposition of Chief Metzger is vital to Plaintiff's response in this matter," (*Id.* at 6).
   Plaintiff's counsel subsequently represented to the court's case manager by telephone that this deposition had taken place since the filing of the response. He proposed to more fully respond to Defendant's motion in light of the deposition, and the court permitted a supplemental response.
   That supplemental response, however, mentions the deposition only once in the context of explaining procedural history, (Pl.'s Supp. Resp. at 1), fails to cite to it for anything substantive, offers no clue regarding the content of Metzger's testimony, and devotes significant space to restating several arguments from the first response. The court concludes that the assertedly "vital" Metzger deposition actually provided no relevant evidence, and that the time expended in waiting for the supplemental response has been wasted. Plaintiff's supplemental response is also defective for making factual allegations concerning Plaintiff's work schedule and whether her seniority was honored without citation to the record. (Pl.'s Supp. Resp. at 3.) The court's analysis will not rely on these alleged "facts" in its analysis.

*Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003); *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict - 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'") (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts, and draw all reasonable inferences from the admissible evidence presented, in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) ("[W]e must determine not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.") (quotation omitted).  The court does not weigh the evidence to determine the truth of the matter, but must decide if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV.  DISCUSSION

### A.  Defendant's Motion to Dismiss Huron Township Police Department

Defendant argues that Plaintiff may not sue the police department separately because it is simply an administrative department of the township with no legal existence, and therefore no potential liability, apart from that of the township. (Def.'s Mot. at 14.)  Plaintiff concedes the essence of Defendant's argument. (Pl.'s Resp. at 6.) The court will therefore grant the motion to dismiss Defendant Huron Township Police Department from this case.

## B. Plaintiff's ADA Claim

To support a claim of discrimination under the ADA, Plaintiff must establish that 1) she is disabled, 2) she is otherwise qualified for her job, with or without reasonable accommodation, 3) she suffered an adverse employment decision, 4) Defendant knew or had reason to know of her disability and 5) after rejection or termination her position remained vacant or she was replaced. *Monette v. Electronic Data Sys. Corp.,* 90 F3d 1173, 1178 (6th Cir. 1996). Summary judgment for Defendant is appropriate because Plaintiff has not shown a triable issue of fact with respect to each of these elements.

There is serious doubt regarding whether Plaintiff's knee problems amount to a disability. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Courts must decide the existence of a disability in a case-by-case manner. *Toyota Mfg.*, *Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). Evidence of a medical diagnosis of a physical impairment is insufficient. *Id.* Instead, Plaintiff must be "substantially limited in performing manual tasks," meaning that Plaintiff "must have an impairment that prevents or severely restricts [her] from doing activities that are of central importance to most people's daily lives." *Id.* The impact of the impairment must be permanent or long term. *Id.* (citing 29 CFR §§ 1630.2(j)(2)(ii)-(iii) (2001)).

The discomfort in Plaintiff's knees impair her ability to remain seated, standing, or walking for long periods of time, to repeatedly bend, reach twist or climb, and to squat or kneel. (Doctor's Notes, Def.'s at Exs. 5, 13; Pl.'s Dep. at 36, Def.'s at Ex. 10.) Viewed in the light most favorable to Plaintiff, a reasonable finder of fact would determine that Plaintiff suffers from a physical impairment, but not necessarily a

11

disability affecting major life activity under the ADA. *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633 (1998) ("An employee demonstrates disability for purposes of the ADA by showing a substantial limitation on a major life activity, not necessarily the major life activity of working.") Even if the impairment rises to the level of a disability, its duration is not permanent and, because Plaintiff now demands reinstatement to full-time work, not long-term. *See Toyota*, 534 U.S. at 198 (citing 29 CFR §§ 1630.2(j)(2)(ii)-(iii) (2001)).[8] For these reasons, the record before the court does not present a question of fact concerning whether Plaintiff suffers a long-term disability.

Assuming *arguendo* that Plaintiff is disabled, she has not demonstrated an issue of material fact regarding whether she is otherwise qualified for her job, with or without accommodation. Plaintiff bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable. *Cassidy*, 138 F.3d at 633-634. Apart from Plaintiff's admittedly undocumented claim that she requested return to full-time work with separate four-hour shifts, (Pl.'s Dep. at 36, 44-45, 59, Def.'s Ex. 10), Plaintiff proposes no other accommodation. Plaintiff averred that in any event her knee worsened in May 2003 and she needed additional treatment, including surgery. (*Id.* at 60-61.) This fact, while it may support Plaintiff's assertion of a long-term disability, undercuts her claim of proposed accommodation. Plaintiff could not have met the terms of the accommodation she says that she proposed. She therefore has failed to support

---

[8] This analysis is not meant to imply that suing to return to full-time work necessarily means that a plaintiff's disability is not permanent or long-term. According to the specific facts of this case, however, Plaintiff's demand for reinstatement to full-time work carries with it the logical implication that, unlike previously, she now has the ability to sit for long periods of time, as a full-time dispatcher position would require.

a genuine issue of fact regarding whether she was otherwise qualified, with or without accommodation.

Furthermore, Defendant held a part-time position open for Plaintiff and gave her training upon her return. "An employer may reassign an employee to a lower grade and paid position if the employee cannot be accommodated in the current position and a comparable position is not available." *Cassidy*, 138 F.3d at 634 (citing *Pattison v. Meijer, Inc.,* 897 F.Supp. 1002, 1007-08 (W.D.Mich.1995)). Reassignment does not require creating a new position, displacing another employee, or violating another employee's rights under a collective bargaining agreement. *Id.* at 634. Plaintiff's demand for reinstatement to full-time dispatching duties raises the specter of each of these unsanctioned outcomes. Defendant in this case waited for medical updates from Plaintiff and kept her position unfilled for seven months. *See e.g., Monette*, 90 F.3d at 1188 (holding that "because the defendant had no way of knowing when, or even if, [the plaintiff] would return to work, we think it entirely reasonable that [the plaintiff's] position was permanently filled in his absence"). Under the circumstances, Plaintiff is seeking a remedy beyond any contemplated by the ADA.

Concerning the other three elements, the court need not reach them in light of the above analysis. However, the court is inclined to believe that Plaintiff has established all three sufficiently for Rule 56 standards. Despite the fact that Defendant never discharged Plaintiff or took her "off the books," in practical terms she was demoted. She was informed that her full-time position was filled and would not be available to her, (Grievance Report at 1, Def.'s Ex. 9), which meant a reduction in hours, pay, and other employment benefits. The adverse consequences for Plaintiff and her

family are manifest. These consequences flowed from the fact that she was unable to work full-time due to her medical condition. *See Monette*, 90 F.3d at 1187. Second, assuming Plaintiff has a disability, Defendant was aware of it through updates from Plaintiff and from her doctor. Finally, there can be no dispute that Plaintiff was replaced several months after her medical leave commenced. These considerations notwithstanding, for the reasons stated above, Defendant's motion for summary judgment will be granted.

### C. Plaintiff's PWDCRA Claim

Claims of handicap discrimination under Michigan law in essence track those under federal law. *Monette*, 90 F.3d 1173 (citing *Sandison v. Michigan High School Athletic Ass'n, Inc.,* 863 F.Supp. 483, 487 (E.D. Mich.1994), *rev'd on other grounds,* 64 F.3d 1026, 1035-37 (6th Cir.1995)). Thus, the court's resolution of Plaintiff's claim under the ADA also dispenses with her PWDCRA claim. *Id.* (citing *Ashworth v. Jefferson Screw Products, Inc.,* 440 N.W.2d 101, 104-05 (Mich. Ct. App. 1989); *Hall v. Hackley Hosp.,* 532 N.W.2d 893 (Mich. Ct. App. 1995)); *see also Cassidy*, 138 F.3d at 634 n.3; *Peden v City of Detroit*, 680 N.W.2d 857, 863 (Mich 2004). The court will grant Defendant's motion for summary judgment on Plaintiff's PWDCRA claim.

### D. Plaintiff's FMLA Claim

To succeed on her FMLA interference claim, Plaintiff must demonstrate that: (1) she was an eligible employee; (2) Defendant was an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Defendant notice of his intention to take leave; and (5) Defendant denied the employee FMLA benefits to

which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 719 (6th Cir. 2003). Because the first three factors are not in dispute, the court turns first to the fourth item.

Defendant's reliance on *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005), for its argument that Plaintiff never notified it of her intention to take FMLA leave is misplaced. In *Walton*, the plaintiff was an hourly employee familiar with the procedure and proper channels for requesting leave who merely called in sick to the company's gate security post rather than doing what was needed. *Id.* at 483-484. In this case, however, it is undisputed Plaintiff contacted the correct human resources personnel and submitted regular medical updates. It therefore cannot be argued that Defendant was not aware that Plaintiff was requesting medical leave time. The holding in *Walton* does not govern this case.

Plaintiff's FMLA claim must nonetheless fail because Defendant did not deny her the FMLA benefits to which she was entitled. Indeed, it can scarcely be disputed that Defendant went above and beyond the requirements of the statute by granting Plaintiff several months of paid leave with benefits. The FMLA requires up to twelve weeks of unpaid leave in any twelve-month period for an employee's serious health condition. 29 U.S.C. § 2612(a)(1)(D). At no point was Plaintiff medically able to return to work before the expiration of her right to twelve weeks of leave under FMLA. Defendant therefore could not have denied her request for leave. The record in this case indicates without dispute that Plaintiff received more than the required twelve weeks, whether the time is calculated based upon when she first left work or based upon when her full-time

position was reassigned.  Defendant's generosity in its package of approved leave for Plaintiff should not be penalized under the statute by not counting Plaintiff's paid leave for purposes of FMLA.  See *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (holding that a categorical penalty against an employer for not granting an additional twelve weeks of FMLA leave after failing to designate earlier leave as FMLA leave is "incompatible with the FMLA's comprehensive remedial mechanism").  The court will therefore grant summary for judgment Plaintiff's FMLA interference claim.

To the extent that Plaintiff claims an FMLA retaliation claim, that claim too must fail.  Because Plaintiff was unable to return to work within twelve weeks of claiming leave, Defendant was free under FMLA to fill Plaintiff's position.  *See e.g., Edgar v. JAC Products, Inc.,* 443 F.3d 501, 506 (6th Cir. 2006) ("Once the 12-week period ends, however, employees who remain 'unable to perform an essential function of the position because of a physical or mental condition . . . [have] no right to restoration to another position under the FMLA." (quoting 29 C.F.R. § 825.214(b)).  Therefore, Defendant acted within its rights when it filled Plaintiff's vacant position.  The decision does not constitute retaliation under the FMLA.

Concerning her situation once she returned, Plaintiff has merely presented vague allegations of an icy reception that already passed among co-workers, denial of a job in another department that someone with more experience earned, and general rudeness from the chief of police, who is three supervisor levels above her and with whom she is rarely required to professionally interact.  Under the circumstances, Plaintiff has not presented an issue of material fact supporting a claim of FMLA retaliation.  The court

will therefore grant Defendant's motion for summary judgment.

## V.  CONCLUSION

For the reasons discussed above, IT IS ORDERED that Defendant's "Motion to Dismiss and for Summary Judgment" [Dkt. #18] is GRANTED.

    S/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  September 15, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 15, 2006, by electronic and/or ordinary mail.

    S/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\05-73291.RANKIN-PETERS.Grant.Motion to Dismiss.wpd